Case number 24-7050 et al. Stacia Hall et al. Appellants v. District of Columbia Board of Elections. Mr. Hayek for the appellants. Mr. Leach for the appellate. Hey Mr. Hayek, you may proceed when you're ready. Your honor, may it please the court. Chris Hayek for appellants. I would like to begin by briefly discussing the stakes of this case. It might not seem a big deal if a few hundred aliens vote in D.C. and maybe never affect the outcome of an election. But if there is nothing wrong constitutionally with this law, there would be nothing wrong if, say, California-led aliens, including illegal aliens, vote in statewide elections, even federal elections. States, after all, have the right to determine voter qualifications in federal elections, but they can't do it in a way that violates constitutional rights. Whether good or bad, such an action by California would certainly be consequential, and the scenario is not terribly far-fetched. If this court says there's no constitutional right violated by letting aliens vote, they might try it. Is this case based on the election of November 5, 2024? Is this case what? Based on the election of November 5, 2024. It's based on that. It's also based on upcoming elections. The question on the merits here is simply this. Do the people, meaning U.S. citizens, and the Supreme Court has rightly equated the two in this context, have a constitutional right to govern themselves? It seems axiomatic that they do, and the Supreme Court has stated this axiom in holdings. The right to citizen self-government is logically implied by the nature and presuppositions of the Constitution. By its nature, the Constitution is a blueprint for a democratic republic and thus presupposes the basic theory of democratic self-rule. For the Supreme Court, obvious consequences of this basic theory are that citizens comprise the self in self-government, that aliens by definition are not part of the self-governing body politic, that the people have the right to be governed by their citizen peers, and that the right to govern and thus the right to vote, because that's how the people govern themselves, is reserved to citizens. I wonder if you might focus the threshold on the standing point that the district court, that it was dispositive in the district court, the theory for standing. Yes. On standing, there is clearly an injury here to every plaintiff because the right to citizen self-government has been violated, and each plaintiff's power of citizen self-government has been reduced, if only fractionally, at this time. One thing that would be helpful, it's not entirely clear to me whether the harm from the distinct citizen self-government theory is any different from the vote dilution harm. In your, I guess it was in the high brief, you talked about a harm of having to vote alongside non-citizens. Right, that is a violation of the right to vote in an election in which only citizens vote. Is that an associational claim? For example, if one thought that the vote dilution was a harm, and there are questions about that, but if it were, then that harm would presumably support standing to raise the claim of citizen self-government. But I was taking you to be also suggesting some other harm, injury in fact, as a basis for standing. Right, the violation of the right to citizen self-government here travels or proceeds through vote dilution. It's the same thing in the sense that your vote is, your power of citizen self-government is diluted because citizens share the votes. So it does, you put it nicely, it proceeds through. So for purposes of standing, we're looking at a vote dilution theory. And typically when Supreme Court or courts of appeals have recognized vote dilution, they've required a point of comparison and that the district court here said, you know, everybody who's a voter has equal votes. So it's unlike gerrymandering or malapportionment where you can point across a line and say my vote's worth less. And so your point of comparison for your vote dilution theory is? Is that it's not every voter in D.C. who's injured by it. It is only citizen voters. So the point of comparison, it's the votes of citizens are diluted compared to what? To the votes of, to their former share of the electorate. Okay, so the point of comparison is the voter, the qualified voter pool before the law that you're challenged. That's right. So it's a temporal comparison rather than a geographic. Yes. That whole discussion is on the mayor's though, correct? Which discussion? Discussion you just had with Judge Pillard. That was about standing. Though my, I was addressing the merits previously. So yeah, I was asking about standing and I took your answer to be that the harm is, you know, they're challenging the law and they have a basis to challenge it because compared to the situation without the law that they claim is unlawful, claim on the merits is unlawful, their current voting power is diluted. And do we have a case in which that kind of before and after as opposed to here and there is the point of comparison? The case cited in our brief about the non-resident voters voting in a city, non-resident property owners. That was decided, you know, in favor of the plaintiffs, even though it was a rational basis test that was applied because being a member of a. Well, the Michelle case seems good language and the opinion seems directly on point. Our decision in Michelle. Oh, Michelle, yes. You certainly have that. I mean, that shows that it's not what what happened there is that each individual state voters right to vote for a house of representatives of four hundred and thirty five voting members was reduced equally, but they all had standing because they were all injured. And but there were other voters in the country that voters in D.C. had their votes expanded. They got to vote for a voting representative to standing questions in the case. One was the congressman, which Vander Jack settled, and the other was the individual voters. Yes, that's why the case is quite analogous to this one. And the court held that the individual voters had standing in that case because their vote was being diluted. Yes, your honor. And it's it's very similar to this case. And it shows the you know what what the law is in this circuit, as opposed to, say, the Fourth Circuit. And then how do you distinguish Daughtry versus Carter, which was the case of hours upon which the district court principally relied? I would distinguish it as there. The plaintiffs failed to show that their vote was even diluted. They said it might be diluted, but it was too speculative. You didn't know when the where these people who had returned were going to be living and whether they lived in plaintiff's districts and whether they would actually lose any voting share in any actual election. And the district court said, well, I'm not relying on the speculativeness part of the reasoning. I'm just relying on the rejection of vote dilution theory in that case. Well, I think the district court quoted the case right. It said that no, not every claim of vote dilution is a state's claim for an injury. And that's true. I mean, they claim vote dilution, but they didn't show it. Mm hmm. Doesn't your. So there's a lot of cases that claim vote dilution in which courts have said no standing, like the bunch of the voter fraud cases from the 2020 election, Bognett, Wood, Maryland election integrity. How do you distinguish the. Assertions of vote dilution as a ground for standing in those cases? Well, I would just one way to distinguish it is that those some of those cases, like the Fourth Circuit one that was that the defendant put in at supplemental authority is should have been dismissed for failure to state a claim on the merits because that there is no right to have a perfect election that and and and that's what they were claiming. But for purposes of standing, would we put ourselves in conflict with the standing analysis in those? Well, I think in a way, your honor, the. It it could have been dismissed on standing, but for a different reason, because the right claim does not legally cognizable. Right claim the correct claim, right? Right. Because it's there was actual injury, even if very small, their vote share was reduced by these unlawful votes. But that that injury, in fact, is not legally cognizable because if the court recognized such rights, democracy would grind to a halt. Sounds a little more policy argument than a. I mean, you couldn't have. Right, right. You couldn't have a. You know, perfect election or you couldn't have any elections, no elections, perfect. Well, is it once the election is conducted? I mean, there they weren't challenging as you are facially a statute. They're challenging what they perceive to be failure to enforce or the Supreme Court of was it the Pennsylvania case Supreme Court's decision? They said that should have been the the state legislature. So in each of those cases, it's sort of a a claim. Yeah, that dilution is mixed in there, but that there should have been enforcement where there wasn't. So it does seem to verge more over into a citizen's concern that the law is not being applied. So it are more of the general grievance. Right. Is that part of your argument or not? Well, there's a I think so. There's a. They're alleging an illegality. They should have enforced it better, shouldn't have allowed these illegal votes to be cast, but they don't have a right to. With enforcement of the law to they're not injured by the enforcement of the law because they don't have a right to a perfect election. I was just going to say, what cases do you rely on specifically for the right to citizen self-government? The main one is Foley versus Connolly. Foley seems quite contrary to your position because it talks about it's permissive for New York to limit state troopers to citizenship. And in fact, you know, it's a limited category of of jobs. And well, well, the reason it's hoped these statements about citizen self-government and the right to govern is reserved to citizens and so forth or holdings is that the court then goes on to say that the practical consequence of these principles is that these laws don't offend the equal protection clause. And and that's true, that that's all the purpose that the court put to those principles in that case. But the principles that are used to decide the case to reach its judgment are still holdings of the court. On on your merits argument, is is your is your substantive due process claim and your complaint the same as the claim you've developed more in your appellate brief about the constitutional right to citizen self-government? Yes, I think it the substantive due process claim is I did not concentrate on in the briefs here. It's because it relies on a right being deeply rooted in the relies on history a lot. And but but but there's other ways for citizen self-government that you I mean, I take it that you're making this argument because in support of your position that we're going to reach the merits that strict scrutiny applies rather than rational basis review. That's what's at stake there is no. Well, it's I don't think you do tier scrutiny for a violation of a right like citizen self-government. That's what I'm saying. So if you're trying to establish that right because because then if it's up or down fundamental right and then it becomes strict scrutiny isn't the isn't the theoretical route to recognition of citizen self-government precisely the analysis provided by substantive due process? No, because it's not it's an unenumerated right that's not protected by implication in the due process clause, but it flow it's it is a logical consequence of the Constitution. You're positing a separate category of unenumerated rights that we don't analyze through the substantive due process. Exactly like like the right to privacy your honor. That was a big until recently at least. I thought the right that wasn't analyzed through substantive due process. No, I think it came out of a number of from emanations from various parts of the Constitution including the Ninth Amendment. And the Ninth Amendment says that the existence of right, you know, of rights enumerated that the enumeration of rights protected by the Constitution in the Constitution should not be construed to deny or disparage other rights that may be retained by the people. And I would say other rights that if they're real at all are protected by the Constitution. The Ninth Amendment seems to indicate that there may well be other rights that follow from the Constitution. And you're saying that we don't discern those through the substantive due process analysis of whether it's deeply rooted. That those are some because it and the Supreme Court has stated how you were supposed to determine those those rights, but another other rights that fought what might fall from the structure of the Constitution. They might be presupposed by the Constitution because it's a meet the substantive due process analysis, wouldn't they? Seems like that's very much framed to embrace just such rights. I think it's deeply rooted in the nation's history because it's it's a it is presupposed by the Constitution and that the exceptions to it historically have been well especially early on say Massachusetts didn't have an explicit citizenship requirement for voting. But John Adams who wrote the Constitution wrote in the Constitution that in this Massachusetts Constitution using the term citizens and people interchangeably in the preamble and and it never says non-citizens could vote. It simply says that to vote you have to have lived here a certain number of years and so forth. And at that time nobody knew there was no authoritative statement of who was the United States citizen. I mean in on July 2nd when the 1776 when the Declaration of Independence was or rather when independence was voted on everybody in that room and outside in the country became an American citizen but not except for people I guess who were just visiting or who were Bridget British soldiers on American soil. And so and it remained unclear just who had become citizens for quite some time. So it was impossible for John Adams to put in a citizenship requirement the U.S. citizenship requirement into the Constitution. You also argue that that the law the D.C. law imposes a facial classification based on citizenship or nationality. Yes. Where is that in the in the text of the law? I don't entirely follow that line of argument. Well it did they dropped the citizenship requirement. So that's taking away a line. Right and that means that non-citizens can vote. Right. And that it means that logically. Under equal protection we're looking at a classification. Right. And we're trying to is this classification unconstitutional and it this law doesn't classify. Well it classifies on national origin or on citizenship. Well it decides not to. Well if this law right but if this law is is it you know you take the text of this law it follows necessarily that non-citizens can vote. Yeah. So it's so there's no distinction between the ways that they're treated. Right. And I would say that that's on its face. I mean just just what it means is that non-citizens can vote. They might as well have said so because it does mean that because it's impossible for that to be the law and for non-citizens not to be able to vote. So the men at the Virginia Military Institute have standing and an equal protection claim subject to heightened scrutiny to argue that the women should not be part of the student body on that theory. Because men are a protected class. Yep. And so the only thing that protects that is a prevents that kind of lawsuit is the idea that it's not a this they drop the distinction rather than making a classification. That's that's the argument that I wanted you to respond to because that's what DC argues that it did here. Right. I think that even if they have a case maybe they do have a case it's just that it doesn't meet it meets strict scrutiny to allow women. It's a it serves a compelling government interest. If we were to decide that that this statute is subject to rationality review rather than heightened scrutiny what's your strongest argument that you nonetheless prevail on the merits? It's there's no interest the district could claim that can overcome a competing or countervailing compelling interest in preserving citizen self-government and the sovereignty of the people. But the presumption of the question just hypothetically is if we didn't accept your fundamental right to citizen self-government argument then you can't smuggle it back in by saying well that's a that's a compelling interest right so so if we'd say that's not a compelling interest that's not a fundamental right but nonetheless what I'm looking for is any argument and and you this may not be your case I didn't see this in the brief but that it's irrational or doesn't even meet the minimal level of scrutiny. Well it's irrational to there's no argument for why illegal aliens aren't permitted to vote and the whole thing is irrational. They do make an argument that they say people are working here paying taxes sending their children to school they're in a practical sense part of the community that there's an interest in having people be you know engaged and feel that they belong. So and and what I'm looking for is on if we assume rationality review applies what's your response why that's not a rational basis? Well I I would go back to saying that uh even if there's no right to citizen self-government the Supreme Court didn't hold that there was it certainly held that there was a powerful interest in citizen self-government. Great thank you. Thank you. May it please the court. Brian Leach for the Board of Elections. I'd like to pick up uh Judge Pillard with a question that you asked of my colleague about this point of comparison idea and they pointed to as you know as my friend acknowledged a temporal comparison before and after. Now the cases in which vote dilution has been recognized as a cognizable injury for article three purposes involve situations where there is a comparison in geographic space or comparison between groups within the same election. They do not recognize this idea of a comparison across time. Part of the reason for that and this Judge Randolph goes to the point you made you brought Michelle. My friend didn't acknowledge Michelle but I think that that case is quite distinguishable because there you have a derivative injury tied directly to a fixed legislative body with a set number of members at 435 by law. So there's a much easier path to finding a particularized injury to each individual voter and each individual congressperson whereas when you're dealing with a changing ever-changing diffuse general electorate the point of comparison itself is essentially a moving target. There's no way to determine uh whose aggregate share of voting power or as my friend put it the the aggregate share of the electorate any group might be experiencing. So in that sense and in that sense along with the point that my friend acknowledges that every vote is still getting equal weight this would be a quite anomalous theory of vote dilution when every vote is getting equal weight and the concept of vote dilution is by definition unequal weighing of votes. I was just going to say was there any um after um testing you know the results of the election that non-citizen votes actually affected the outcome of the election? Uh I know how many they have the board has kept track of how many non-citizens voted last election I believe it was 480. Do you have an updated registration number? I believe it's 900 and I can actually do have the numbers here um 980 citizens as of January non-citizens as of January 2025. How many of them were illegal aliens? I don't know the number uh on that Judge Randolph and the reason I don't is because the council made a reasonable judgment that it would be uh unnecessary for purposes of the district's uh goal with this law which was to expand access to democracy at the local level to make distinctions based on federal immigration status. It's also considerably easier for the board to administer when they don't have to uh sort through all the different types of federal immigration statuses uh and so under rational basis review those are entirely proper judgments for the council to make. Um but yeah so I don't know the answer to that um but I would acknowledge as well that my friends are bringing a facial challenge. You don't know it. Does anybody in the district uh board of elections know it? I don't I don't know your honor um I apologize that I don't um but part of that is because the law by its by its terms is not drawing distinctions among non-citizens based on their federal immigration status and my friends are bringing a facial challenge to the statute so they have to show it's unconstitutional in all of its applications not just as to potentially legal immigrants but as to people were lawful permanent residents uh people with lawful visas uh they haven't made that any sort of showing like that on any of their claims on the merits. You pointed out that the plaintiffs allege that they're registered but they don't allege that they have or intend to vote um I guess the question for you is why is it necessary that they intend to vote to support their standing on a vote dilution theory? Can we infer that and is the number of protesting non-voters that are registered you know something that gives enough weight to their votes? Well notably my friends have not argued that you should infer an intent to vote what they've attempted to do is submit additional affidavits attached to their reply brief and drop a footnote in the reply brief uh asserting new theories or new allegations about intent. They claimed that their vote was diluted now uh that doesn't imply or suggest that absolutely states they vote I mean how can you have a vote that's diluted or or evaporates without voting? I mean it necessarily follows from the allegations in the complaint seems to me but they've made a sufficient uh uh allegation of voting. I think it has to be more than just an allegation of intent or even implicit it has to be a concrete plan as Lujan teaches. It's not enough to just say I intend to vote at some point in the future even if they had said that I think it had to be something a bit more maybe a specific election but like like what give me an example. I think some of the allegations they put on their new affidavit which are in the stated in the present tense as of January 25 they're not stated in terms of what they intended at the time they filed suit. The allegations in the declarations are about voting in the past. There are allegations yeah yes and there but there are some before this statute was even passed. Yes. So the I guess what you're saying is if you voted in the past then we can infer that you're going to vote in the future. No no your honor there's more than the supplemental affidavits discuss not only past voting but an intention to vote in the future. Now they don't say it's too little too late but that's exactly what they should have argued. This is a vote dilution theory as Ms. Hall says alleges in her declaration of January this year. I have voted for candidates for local offices in 20 and 22 and 24. I intend to vote in 26 and as Mr. Heller says I voted in every presidential election since 1980 usually including voting for the local council members and I plan to vote in the upcoming elections and so your position is that's exactly what would have sufficed for to raise their dilution argument but it's too late because it wasn't in the complaint. Yes if they had alleged that in their complaint they would have gotten past the imminence requirement. It would not have helped them when it comes to the particularization issue. It wouldn't have helped them with the grievance problem but it would at least make a showing or a plausible allegation of a certainly impending injury. Now they did in your memorandum that you filed is is the argument that they didn't sufficiently allege that they were voters. Where is it? I'm sorry? Where in your in the memorandum that you filed? In your briefs have you argued that they didn't allege that they had and will vote? Uh in the argument the arguments in our brief um I don't know the exact page span but it's uh I'm talking about in the district court in the district court oh I I'm sorry I don't have the exact page span of what our brief uh it was I know we raised the argument below because they responded to it the district court didn't address it I can try to find it now I apologize um but argument I know was raised. Was there any allegation in the complaint about I'm just trying I'm just I'm sorry no I was just gonna say was there any allegation in the complaint about intending to vote or how the vote was to be diluted? Uh there are allegations there are legal conclusions about how the law would go about affecting the votes there is no attempt at quantifying what the degree of vote dilution would be there's essentially a legal assertion that the effect of the law would be to uh quote-unquote dilute the weight of uh or dilute the I should say the voting power of certain groups uh or the citizens generally. So I think I mean in this court I think it's the red brief at pages 22 to 23 talks about uh on 23 plaintiffs complaint is noticeably bereft of any allegation that they intend to vote or run for office for elections the complaint asserts nothing about plaintiffs intentions or plans to vote doesn't even allege that they have ever voted in past district elections and I think Judge Randolph was asking did you raise that in this district? Yes JA-26 I have the site in it. JA-26 is where you raised it. Yes that is correct um complaint has no allegations about intending to run in future elections and the bare minimum they need to intend to vote uh according to the precedent of the eighth and ninth circuits which have addressed similar issues. And does does that matter I mean if these are uh Republican voters and they feel like Republicans never win in the district why am I going to bother to go line up somewhere um is the existence of registered voters who decide for reasons of futility not to vote uh is that enough to raise a dilution theory? I'm not sure it would be your honor um but I would what if you were in a packed district and you're just or uh maybe it's the inverse in a crack district I have no you know if every hundred percent of people who share my interest went out and voted we would have zero chance. So I care and I want to bring a gerrymandering claim but really I have to have done the futile thing. Well here's why you say I would do it in the future here's here's why you might not need to do that there's two different aspects if you will to a racial gerrymandering claim based on cracking one is the potential dilution of your vote now if you don't intend to vote in the future you may not have an imminent injury as to that but the other component of it is essentially a stigma claim but I mean that's not true for the like if we look at uh ill uh political gerrymandering partisan gerrymandering um that is that is true your honor um but I I would say nothing really turns on anything like that in this case because here there's not a claim of futility um but even if again even if the court disagrees with us on this imminence issue that's only one component of standing for them and getting past that doesn't help them at all when it comes to the generalized grievance you argue that the power of plaintiff's individual votes was not diminished in any way really I mean what about the Michelle or Michael our case where it's it is about a change to the ability of territorial representatives to appear in the committee of the whole in the house it's a it's a before and after change so in that respect it's just like the change here what what the plaintiffs are challenging is a law that relative to how it used to be does dilute their votes the difference is when we say there's no effect to the change of their votes what we're acknowledging is the fact that they admit that the ways of their individual votes are exactly the same as they always were no they're not because if you're you know I mean just like with the representatives being one of 435 versus one of 440 the vote of the representative after the inclusion of additional representatives is marginally diluted so too you add uh non-citizen voters and after you've done that your vote is relatively speaking diluted in analyzing claims that involve expansions of the general electorate what courts have looked to is the fact that the it's it's different there's a difference between the weight of your vote and your share of the electorate now acknowledge there are cases where the line can be fuzzy but there is still a line and it's and it's one that makes sense when you're dealing with uh expansions of a diffuse and ever-changing general electorate a change or adding of non-members to a fixed legislative body but I I do want to if the court has any questions I'm happy you know we're comfortable with the merits if the court believes that they're standing here we set out in our briefs why we don't think that's the case you said that there are cases about the differentiate between expansions of a diffuse and ever-changing electorate versus those that you know take a particular number and add a particular number what do you which cases are you thinking well michelle is really the only one that I have found that involves the same type of fact pattern and it's a highly unusual fact pattern tied I think to the unique context of legislature standing which has a long history there's been a lot of water under the bridge since michelle but in cases involving expansions of the general electorate I mean we have this court's decision in downtree and I do want to take that case up because I think my friend has missed part of it he's right that part of it deals with concreteness and speculativeness but there's a critical part there's a third leg of the stool with downtree which is particularization and this is in the sentence in the decision leading up to footnote 27 where the court says these plaintiffs don't have standing in part because they haven't shown that their votes are disfavored vis-a-vis those of some other group and it borrows that vis-a-vis language from baker which is referring to unequal weighing of votes in the same election where you have a fixed geographic location malapportioned districts to draw this comparison would a would a voter have standing if because of redistricting they were placed in a in a district that had 10 times more people than the one that they were in would they have standing then not if their proportion of representation corresponding to that district remains uh if there's still a one person one vote uh breakdown between the districts that I don't think they would have standing because there hasn't been a dilution of their vote are you familiar with uh Westbury versus Sanders uh I am only passingly familiar with that case your honor it hasn't been discussed in the briefing so I I know I know it I believe it involves congressional redistrict held that they because their vote would be diluted by being placed in another district that was more populous that they had an injury that was sufficient for standing well taking that to another level if you had more non-citizens in the district than citizens and then we go with your logic about the votes are still counting the same in terms of the same weight within that be a scenario um so I want to take this I apologize your honor for not knowing about Westbury um I I will take your honor's word for that that standing was found there I do think you don't have to take my word for it if you take a look at Michelle Michelle interpreted Westbury exactly the way that I put it okay well I understood the question yeah I I understand your honor I think I may not be understanding the hypothetical the facts of Westbury but if you're taking one person from a roughly equally apportioned district and putting them in another district that just simply has more people is how I understood the hypothetical I I'm I'm not quite sure that at least at the state level that that would be uh if that's how this is from this is from Michelle the supreme court has repeatedly held in voters standing to challenge practices that are claimed to dilute their votes such as being placed in a voting district that is significantly more populous than others see Westbury is that right no no your honor it's not wrong but what is it's referring to something else it's referring to a comparison between two different districts where they have uh different levels they have the same level representation but different numbers of voters and that's what creates the unequal weighing of votes because the person in the less populated district their vote has five or six or ten times the power of the people in the malapportioned district so that's an entirely different situation because here the votes are weighing equally um but to to pick up judge childs with your hypothetical um in that scenario I still don't think there would be a vote dilution claim of injury on standing there may be a different theory of standing or there may be a different uh party that could bring a suit there may be a candidate that could bring a suit that may be a political party that could bring a suit based on either an organizational theory a version of resources or a candidate could bring a standing claim potentially on a competitive injury but for purposes of vote dilution if the votes are being counted equally uh the governing law suggests that there is no article three injury in that context um so you're still hanging on that there's a generalized injury here but you also in response to judge randolph's question earlier when we were talking about the 980 voters that you can't um kind of segregate out you know based on who's non-citizens versus citizens there's data points there to let us know this that if there is some other type of injury um I think that's right uh but I think that's just a limitation on the facts of this case if I'm understanding your hypothetical correctly in the other situation there just may be other types of claims that could be brought but um the fact that we don't know I think is further evidence that we don't know there's an injury that's been alleged okay so for right now as to standing you're you're hanging um that there's no allegation in the complaint about the intending to vote or or how the vote is diluted or um any allegations about running in future elections therefore generalized grievance is standing uh I might just amend that somewhat okay the lack of an intent to vote in the future and the lack of an allegation about running or concrete plans to run goes to imminence that's an independent basis they haven't alleged an imminent injury but the injury they've alleged even if it is imminent is a generalized grievance that is not particularized because it's shared as they admit by every citizen in the district or by every citizen voter in the district okay and then on the citizen self-government um help me out there because that term is not utilized a lot through the cases and so um is that forfeited also because not raised before the district court specifically our position is that that of standing that argument as a theory of standing has been forfeited because it's not uh it was not argued below as a theory of standing now we acknowledge they they alleged a cause of action with that uh idea I understood my friend to concede that the citizen self-government theory of standing is essentially equivalent with their vote dilution theory if that's the case then it's probably before the court and there's no difference between the theories of standing um they are the ones that on appeal that kind of reframed it uh either way though it still is a generalized grievance um for the reasons set out in our brief and as I've explained uh on the candidate standing though but you do consider there to be such a claim no no we on the merits no I'm sorry I'm sorry I misunderstood the question no they they are certainly right but they in order to trigger strict scrutiny that right they have to show it is deeply rooted in history and tradition here they have marshaled no historical evidence to support the idea that citizens since the founding have had this unenumerated fundamental right to exclude non-citizens from participation in local elections they acknowledge the history cuts against them and they simply say that they try to flip the burden back onto the district or board of elections to show that the history uh supports uh non-citizen voting but the burden is on them under Glucksburg to show that this right is deeply rooted in history and tradition the burden is not on us to disprove that point the fact that they acknowledge that the history is uh at best uh unclear we would submit it's quite clear but their theory is it's unclear that's essentially an admission that they can't prevail on the merits because Glucksburg I think if you take it seriously and the courts reaffirmed it in Munoz most recently uh historical equivalence it means that plaintiffs lose in a fundamental rights case I don't think you can establish a deeply rooted right without a robust historical record supporting the claim that you're bringing and so so you're to go back a little bit in your argument you're saying that the plaintiffs uh waived uh certain arguments regard with respect to standing if they didn't raise it in the district court right I you have strong support in this circuit for that proposition uh but I've never understood the rationale behind it if you didn't raise any objections to standing in the district court have you waived it no jurisdictional objections right so the court has an obligation to decide cases only when it has jurisdiction but there's a there's a corollary and that is the court has to take jurisdiction when it has and so I don't know why only the party opposing uh jurisdiction cannot waive any argument but the party asserting jurisdiction can it seems to me not to make much sense I well I respectfully disagree your honor I think it does make sense in this respect I think it's rooted in the presumption that federal courts uh presumptively lack jurisdiction and that the burden is on the party asserting or invoking the court's jurisdiction to affirmatively show it does exist and the courts should only exercise jurisdiction when necessary and so if there's an argument in favor of jurisdiction and the party with the burden to invoke and show that affirmatively jurisdiction exists if they don't make that argument I think it's a fair matter of procedure and they make the argument in the district court and you're the defense counsel you don't respond have you waived have you have you waived any objection to jurisdiction the answer is no right but I think that's your argument if if somebody raises it in the district court if you don't respond you've waived the response it doesn't wash it doesn't wash in exactly the situation I'm talking about I realize there's an asymmetry but I do think the asymmetry is rooted in the asymmetry of article three itself which is that I'm wasting the court's merits uh it's an uphill battle why is it administratively easier for the board to have a voter registration system that doesn't take into account whether someone is a lawful you know is is a lawful lawful documented versus an undocumented it is administratively easier because it is often quite difficult to sort through different types of in different statuses of federal immigration law and if someone is coming in and they have if the board is not necessarily equipped to be able to decipher out uh immigration fraud on the spot when it's registering people is there not such a thing as like a green card I'm sure there is but there's also there are also fraudulent immigration documents that the board is not you know IDs for citizen voting as well and so one could have some kind of requirement that you have you know what is the ID now the one whatever the yeah the real ID or um I don't know that and it's I guess another way of putting it is it rational well to allow undocumented people people who are not present legally vote all of those arguments I think would be persuasive if this were a heightened standard of review and even under rational basis I don't think there are but my friends haven't made them they have they have forfeited entirely any argument that this law does not pass rational basis review by not arguing it convicted felons can vote in DC can't they were re-enfranchised in 2019 yes your honor 2019 was it that's that's my understanding yes that is people who are serving a prison term or people who have been who have served the term I believe it's people who have served so they're so they're people who are presumptively back as full members of society with their civil rights having been that is my understanding although I I as I said before I'm not 100 sure about that but I assume that that's correct um but to go back to what your your honor raised fair points if this were a situation where we had the burden to show it was rational by some colloquial measure I think that that would be those would be arguments we would have to grapple with but no one has raised them in this case and the burden is on plaintiffs to show it to show not just that it's irrational but to negate every conceivable justification for the law even at the pleading stage does the fact that the act was passed for the purpose of enfranchising non-citizens make it subject to heightened scrutiny because it has the purpose of discriminating against citizens or American nationals by diluting their vote not at all your honor why not there is no plausible inference of discriminatory purpose simply by enfranchising felons and the reason for that is that yeah the law first of all they have disclaimed reliance on legislative intent in their complaint at ja13 they say legislative intent is not necessary because they think this is facially discriminatory they're wrong about that I think as the colloquy you have with my my colleague shows the law is facially neutral but they've disclaimed any argument about that they point to no well-pleaded facts in their complaint on this point but the the more fundamental legal point for why their claim fails is that uh the court courts do not impute a discriminatory invidious intent to the legislature simply because the law has an effect on certain members of the population even when uh it might appear to be inevitable particularly in a case like this where you have non-discriminatory rationales for the law so if you take a case like uh feeney for example um you have a situation where uh the the there was a veteran's preference hiring right and everyone acknowledged it had an inevitable uh disadvantage for women because of historical disparate gender disparities in the military and nevertheless the supreme court recognized that well it does have this unfortunate effect but we're not going to infer discriminatory intent because this is a legitimate law it has other legitimate purposes and so we're not going to draw this this inference of discriminatory purpose simply because of its effect arlington heist lays out a number of factors that go into the showing of discriminatory intent my friends have not taken up any of them particularly when you view this in light of the presumption of legislative good faith there's really no basis to infer that there was an ant there was animus towards citizens to provide a few examples uh judge randolph brought up the fact that felons were re-enfranchised i don't think anyone would infer from that discriminatory animus against law-abiding persons if the district were to lower the voting age i don't think anyone would infer that there was animus towards the register to vote do you automatically become uh not eligible but required to serve on juries you do not your honor my understanding is that uh the statute governing jury service still exclude still requires citizenship still have to be a citizen to serve a jury that is my understanding yes your honor um if we were to reach the merits of the equal protection clause claim does your position that the act removes a voting classification mean that plaintiffs have failed to state any equal protection claim or does it mean that the act is subject to rational basis review it's subject to rational basis for why if there's no classification is it subject to rational basis review under the due process clause or is it subject what's the why where does the equal protection clause even have bite well i i can only follow the doctrine of the court on this point um conceptually i'm not quite sure why you would go to rational basis review it is a bit of a formality in many cases uh i think it derives from the equal protection component of the due process clause itself um i think it's uh but when the statute is facially neutral i'm not aware of any court simply ending the analysis there there's usually an analysis of rational basis uh maybe as a backstop just to ensure that there is nothing wholly irrational in the law it could be in certain as applied claims there could be an irrational application of the law to a particular person even though it's facially neutral now we have nothing like that here but i think that's why a court might proceed to the rational basis and if we were in rational basis territory do we apply the standard test and ask whether the law is rationally related to a legitimate governmental interest or the somewhat modified version that courts looking at non-resident vote enfranchisement cases use looking at certain factors to determine is the newly enfranchised group do they have a substantial interest in the election or is that just an application of rational basis i think it seems that have a little more bite yeah two points i think the outcome in this case is the same either way i don't think the court needs to worry about that but i i see your honor's point that uh i don't know that it has more bite this irrationality when it comes to looking to the interest of those who have been enfranchised i think it could just be a particular subset of the idea of rational basis would be certainly if you're enfranchising people with no legitimate interest in a jurisdiction then it could very well be it's irrational and my friend acknowledged the the brown case from the eastern texas tennessee involved that type of fact pattern now that was entirely different in this case involved non-residents fragmentation of voting a thinly veiled effort to perpetuate decades of racial discrimination here every person gets a single vote only residents and this is important only residents with fixed residency in the district who have disclaimed the right to vote in any other country have the right to vote in the district under this new law so there are still limitations on which non-citizens qualify and all right thank you no more questions i think uh thank you we would ask the court to affirm okay now did mr hayek uh reserve any time all right we took you over we gave you more time than that on the primary amendment but we'll give you the two minutes for rebuttal if you want it you don't have to take it yes your honor um we did state below that uh uh we had standing because our uh plaintiff's plaintiff's right to a citizen self-government was violated and the violation of the constitutional right is a uh an injury and uh if you look at you said that for purposes of standing yes we're standing we said that below that that was a the same boat dilution harm that it was um we did allege though that um separately in below that the uh we had standing because our rights were violated um the right to citizen self-government was violated we also said the right to citizen self-government uh implies the right to vote in an election which only citizens vote and that's on uh at pages 16 and 64 through 68 and we cite those pages in our brief uh defendant never responded to this argument so if anybody forfeited it was it was defended and uh the court i think passed on it by treating it all as vote dilution uh and we previously discussed that your honor um this is uh also not a general grievance it's important to point out because not all dc voters are injured by this law only citizen dc voters are injured by this law non-citizen voters have been benefited by the alien voting law what about the i mean i found it striking that there's this is a case about vote dilution and there's nothing in the complaint saying that these are people who ever voted or ever intended to vote that's really problematic and i wonder why once that was brought to your attention why there wasn't an effort to amend the complaint in the district court um well uh if somebody goes to the trouble of suing or if someone's public public spirited enough to go to the trouble of suing uh over their voting rights they're to go to the trouble it can be presumed that they're either going to go to the trouble of voting or that it would be futile it's uh it's very you have all kinds of programmatic interests that don't support standing to sue i mean that's a really central part of our inquiry you could imagine um it also follows from a claim of vote dilution your honor that uh you you intend to you can if you're claiming that your vote is going to be diluted and also there's a statute that allows defective jurisdictional allegations to be amended in the trial or appellate courts upon terms uh which is congress's way of saying what are you referring to i don't i don't recall that being cited yes we cited in the uh statements um in the in the statements in this court your the statements the declarations of uh plaintiffs your honor the declarations attached to the reply brief yes your honor and i think that's congress's way of saying that uh it it's not it's not right that uh defendants can't waive standing the plaintiffs uh can you any other questions all right uh the case is submitted
judges: Pillard; Childs; Randolph